· PEOPLE *v.* BERNARD.[1]

1. CRIMINAL LAW—ASSAULT ON OFFICER—EXCUSE—EVIDENCE.
     Respondent, who was the owner of a small boat moored at a
       certain dock, knew that it was desired to serve process on
       him, and had threatened to shoot any one who came on his
       boat for that purpose. Witnesses for the prosecution stated
       that the sheriff and his deputy went to the dock, and the
       sheriff told respondent that he had come to serve process on
       him, and wished to explain the matter; that respondent there-
       upon ran on his boat, secured a pistol, and declared he would
       shoot if they came on the boat, and did shoot the deputy.
       Respondent testified that he acted in self-defense, and that
       the officers fired the first shot. *Held*, that the evidence jus-
       tified a finding that the shooting was without reasonable
       excuse or in belief that a forcible felony was being attempted.

2. SAME—DEFENSE OF DWELLING-HOUSE—PASSENGER BOAT.
     A small steam launch, run as a public conveyance, having
       seats extending around it, and no sleeping or living apart-
       ments, was not a house or castle which might be defended
       against entry by an officer to the extent of taking his life,
       merely because the boat was moored to a dock, and used as a
       sleeping berth by the owner.

3. SAME—ASSAULT WITH INTENT TO KILL—DEFENSES—VOID PRO-
     CESS.
     Where, in a prosecution for assault with intent to kill, it
       appeared that the respondent, after threatening to kill any
       officer who should attempt to serve process upon him, on
       meeting an officer armed with process, had refused to listen to
       any explanation, but had immediately procured a pistol and
       opened fire and wounded the officer, it could not avail him to
       show in defense that the writ under which the officer was
       assuming to act was void upon its face.

Error to Van Buren; Carr, J.   Submitted November
15, 1900.   Decided January 29, 1901.

[1] Rehearing denied May 7, 1901.

Charles L. Bernard was convicted of an assault with intent to commit the crime of murder, and sentenced to imprisonment for seven years in the State prison at Jackson.   Affirmed.

*Dwight Goss*, for appellant.

*James E. Chandler*, Prosecuting Attorney (*William G. Howard*, of counsel), for the people.

LONG, J.   Respondent was convicted of the crime of assault with intent to kill and murder one John Britton, undersheriff of Van Buren county.   In the summer of 1899, the respondent, together with one M. J. Maloney, brought from Chicago to South Haven, this State, a small steam launch, which they ran as a public conveyance on Black river and the harbor at South Haven as a pleasure boat.   They tied the boat, when not in use, to a certain dock on Black river; and, refusing to pay dockage, the parties owning the dock commenced proceedings against the boat under the water-craft act of this State to recover the amount due them for wharfage and dockage.   The process issued in that case was delivered to one Gleason, a deputy sheriff, for service.   He attempted to serve the same, and in July, 1899, went aboard the boat of respondent, called the Louise, for that purpose, when the respondent and Maloney steamed the boat up the river for a distance, and forcibly ejected Gleason therefrom.   On the evening of the same day, Gleason again attempted to serve the process, when, as Gleason testified, respondent told him that if he came aboard the boat he would shoot him.   Respondent was thereafter arrested for resisting an officer in attempting to serve process.   The people claim that, when respondent was taken before the justice for that offense, he stated that he would shoot the first man who came aboard his boat to serve process.   It is shown by the people that, after Gleason failed to make service of the process, it was turned over to the sheriff of the county, and that he, on

the 4th of August, 1899, accompanied by Undersheriff Britton, went down to the dock where the boat was tied for the purpose of serving the process; that they met the respondent on the dock in front of the boat, and the sheriff introduced himself to the respondent, saying, "I am the sheriff of the county, and I have come to serve process on your boat, and here is a copy of it, and I would like to explain the matter to you;" that he got no further with the explanation when the respondent jumped upon his boat, ran around the boiler to the tool-box, took out a revolver, and said he would shoot them if they came upon the boat; that they went upon the boat, when respondent shot and wounded Britton. The defense was:

1. That the writ under which the officers were acting was void, and not fair upon its face, and afforded them no protection for what they did.

2. That respondent was defending his own person; that he was protecting his castle; and that he had reason to believe that a forcible felony was being attempted.

We shall discuss the second question first. The people's testimony tended to show that the sheriff and his undersheriff went to the dock, and the sheriff introduced himself, and told respondent what he was there for, and gave him a copy of the process. He must have known from the acts and conduct of the officers that they were not there for the purpose of offering him any personal violence. When the sheriff attempted to explain the situation to him, he would not listen, but at once rushed to the tool-box, where his revolver was kept, and, according to the people's witnesses, fired the first shot, wounding Mr. Britton. He fired directly at him, with apparent intention to kill. It is shown by the testimony that shots were fired by the officers, but the whole testimony, aside from respondent's, tends to show that he fired the first one. It is also shown by testimony introduced by the people that at the time of the first arrest of the respondent prior to that time, for resisting an officer, he made threats that he would kill any officer who attempted to seize his boat. This is

undisputed by the respondent, but his testimony in regard to the shooting was that, before he attempted to make any resistance, the sheriff fired on him first, and that he only acted in self-defense.   As to the shooting by himself, he testified:

"Britton told me to throw down my revolver.   When he said that, he had a gun in my face, and I had been shot, and I stood there paralyzed, with the revolver in my hand as I had grabbed it out of the box.   Britton says, 'Drop that, or I will put a hole through you.'   I simply opened my hand, and the revolver fell out of my hand. It was of no use to me; I was paralyzed."

Upon his cross-examination respondent admitted that, after the shooting, he immediately left South Haven, and fled to the State of Virginia.

The questions as to whether respondent fired the first shot, and whether he was acting in self-defense, were fairly left to the jury in the charge by the trial court.   The court instructed the jury upon the question of the elements of the crime:

"You are instructed that while the law requires, in order to constitute an assault with intent to commit murder, that the assault to kill and murder must have been committed under such circumstances and with such premeditation and design as would have made the killing murder had death ensued, still it does not require that the willful intent, premeditation, or deliberation shall exist for any length of time before the crime was committed.   It is sufficient if there was a design and determination to kill distinctly formed in the mind at any moment before or at the time the blow was struck or the pistol fired.   In this case, if you believe from the evidence, beyond a reasonable doubt, that the respondent discharged his pistol at the under-sheriff, and that before or at the time he did so he had formed in his mind a willful, deliberate, and premeditated design to take the life of Britton, or any person who should attempt to seize the boat Louise under the warrant introduced in this case, and that the pistol was fired in furtherance of that design or purpose, and without justifiable cause or legal excuse therefor, then you should find the respondent guilty.   *   *   *   In determining the

respondent's intent, you may consider the threats made by him, if you are satisfied beyond a reasonable doubt that they were so made; and you may also consider the fact of his leaving the State in the manner he claims he did, as well as the fact that some of the witnesses testified to having heard only four shots, as claimed by the respondent."

We think the court correctly stated the law in this charge, and that the testimony introduced by the people fully sustains the claim made by the prosecution that the shot fired by the respondent was without any reasonable or justifiable excuse whatever. These were questions of fact, which were fully settled by the verdict of the jury.

The claim made by counsel for respondent that this boat was a dwelling-house, and that respondent was justified in resisting an attempt to enter it or seize it, finds no warrant in this record. The boat was a common carrier of passengers for hire. The fact that respondent slept at night on a seat in the boat could in no manner change the character of the boat, and transform it into a dwelling-house. A somewhat similar question was raised in *State* v. *Smith*, 100 Iowa, 1 (69 N. W. 269). In that case the sheriff had for service an order issued by a justice of the peace for the removal of respondent and his goods and office furniture from a certain building in the village. He found the premises described in the order occupied by the respondent and his brother. The respondent, who was a physician, moved the medicines out of the building, but claimed that the groceries belonged to his brother. The latter was not named in the order, and refused to move the property. The sheriff insisted upon his right to do so, and, while attempting to enter the building after respondent had left it, the brother discharged a gun at him. The shot missed the sheriff, but hit four children, who were on the opposite side of the street. It was claimed that respondent was an accessory to the act. The respondent requested the court to charge the jury:

"You are instructed to determine as to whether or not

that was the dwelling-house or habitation of John T. Smith [the brother]; and, if you find that it was his dwelling-house or habitation, you are then instructed that he did not, under the law, have to retreat from it, but could defend himself and resist intrusion by any means, if he, as a reasonable man, had an apprehension that the party making the attempt to enter was intending to commit great bodily harm, and that his entering was for the purpose of committing said bodily harm."

This request was refused, and the refusal assigned as error. The supreme court of that State said upon that question:

"It is urged by the defendant that the evidence authorized the jury to find that the room in which John T. Smith carried on his business was his living apartment, in which he resided. It appears that the defendant and his brother occupied the front part of a room 12 by 24 feet in size for business purposes. It was separated from the back part by a partition, which extended but a part of the way across the room, and did not reach the ceiling. John T. Smith had occupied the room with the defendant for about three months, having some groceries in the front part, and sleeping and keeping a satchel and some clothing in the back part. His occupation was by virtue of some arrangement with the defendant, who claimed that he had leased the premises, and he obtained his meals outside of the building. We find nothing in the record which would have justified the giving of the instruction refused. The evidence did not show that the place was a dwelling-house or private habitation, but a public place of business, to which the people of the community were expected to resort. The fact that John T. Smith slept and kept a few articles of clothing there did not change its character."

The boat in question had no sleeping apartment, and, so far as the record shows, no place for meals, but was a small river boat, with seats extending around it, used in carrying passengers for hire. The public were invited to come there, and it cannot be regarded in any sense as a dwelling-house or castle of the respondent, which he had a right to defend from intrusion. He was not assaulted in his dwelling-house. The officers were there simply for the purpose of serving process, and, according to the testi-

mony offered by the people, without any reasonable or justifiable excuse the respondent fired upon Mr. Britton.

In view of the above facts, we think it is not important to discuss the first question raised by respondent's counsel. Whether the writ under which the officers were acting was void, and not fair upon its face, or not, is of no importance. The respondent could not take the law into his own hands, and, with so little excuse as here shown, assault another with a deadly weapon.

The conviction must be affirmed.

The other Justices concurred.